

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV–16–72

GLORIA NAVARRETE

APPELLANT

V.

HEIDI CREECH

APPELLEE

**Opinion Delivered:** September 21, 2016

APPEAL FROM THE HEMPSTEAD COUNTY CIRCUIT COURT
[NO. 29PR–2013–123–1]

HONORABLE ELLEN BRANTLEY, JUDGE

AFFIRMED

## RAYMOND R. ABRAMSON, Judge

Appellant Gloria Navarrete appeals from a decree granting the adoption of her granddaughter, S.R., to appellee Heidi Creech. On appeal, Navarrete contends that the trial court erred in granting Creech's adoption petition because (1) Creech's actions warrant application of the Arkansas clean-hands doctrine and (2) Navarrete should be considered a "mother" within the meaning of Arkansas Code Annotated section 9-9-201(a)(1) (Repl. 2015). We disagree with Navarrete's assertions and affirm.

In 2012, Creech worked as a juvenile probation officer at Southwest Arkansas Counseling and Mental Health Center, Division of Youth Services ("Southwest"). F.R., a minor, came under Creech's supervision in a families-in-need-of-services (FINS) case. When F.R. was eleven years old, she gave birth to S.R., who is the child at issue in this case. Navarrete is the mother of F.R.

In February 2013, Creech learned from Navarrete that F.R. had "run off again." F.R. was eventually located in Gurdon, Arkansas. When Creech and a translator who also worked at Southwest, Beatrice "Betty" Valdez, attempted to return F.R. to Navarrete's home in Hope, F.R. became hysterical and made allegations that her stepfather had been raping her since she had her child. F.R. did not want to live there and stated that her mother did not believe her about the sexual–abuse accusations.[1] Three days later, F.R. called and asked Creech to take her daughter, S.R., who was five years old at the time. On February 26, 2013, the circuit court heard the emergency petition for the appointment of guardian of the person and the estate of S.R. The court granted Creech guardianship of S.R. on March 5, 2013. F.R. signed an affidavit of relinquishment and termination with power to consent to adoption on May 16, 2013.

On September 9, 2013, Creech filed a petition for adoption of S.R.; F.R.'s consent and waiver forms mandated by statute were attached. On December 16, 2013, Gloria Navarrete filed a motion to intervene and for continuance of the adoption hearing that was scheduled for December 18, 2013. She argued that she stood in loco parentis to S.R. Creech responded, denying that Navarrete stood in loco parentis. On April 23, 2014, the circuit court granted Navarrete's motion to intervene, finding that she, "at least on the face of the stipulation, had acquired sufficient significant contact with the minor child to have acquired in loco parentis status." The circuit court also noted in its order that the best interest of S.R. was of paramount importance in the case, just as it is in all adoption and custody matters.

Briefs were filed in the adoption proceeding, and a hearing on Creech's adoption

---

[1] F.R.'s stepfather, Antonio Navarrete, pled guilty to raping her.

petition was held on March 12, 2015.[2]  On September 30, 2015, the adoption petition was granted, and a decree of adoption was entered. Navarrete timely filed her notice of appeal on October 30, 2015, and the matter is now properly before this court.

Navarrete first argues that Creech should be precluded from adopting S.R. pursuant to the Arkansas clean-hands doctrine. The clean-hands doctrine bars relief to those who are guilty of improper conduct in the matter in which they seek relief. *Nationsbanc Mtg. Corp. v. Hopkins*, 87 Ark. App. 297, 190 S.W.3d 299 (2004). Navarrete implies that Creech violated Arkansas Code Annotated section 17-27-102(8) (Repl. 2010), which defines the practice of counseling, and Arkansas Code Annotated section 17-103-103(2) (Supp. 2015), which defines the practice of social work. Navarrete argues that because Creech was engaged in the practice of counseling and social work without a license within the meaning of Arkansas law, she committed criminal acts and ethical violations. There is no merit to this argument.

Navarrete cites to no agency or authority that has ever accused Creech of any ethical violations or criminal liability. No evidence was presented to show that Creech had committed an improper act or wrongdoing in the scope of her employment. Navarrete has failed to provide persuasive authority or argument to support her position. Our supreme court has steadfastly refused to consider an issue that is not supported by convincing argument or citation to authority and that is otherwise not apparent without further research that the argument is well taken. *Rose v. Ark. State Plant Bd.*, 363 Ark. 281, 213 S.W.3d 607

---

[2] On October 21, 2014, the chief justice of the Arkansas Supreme Court appointed retired Judge Ellen Brantley to hear this case after Judge Randy Wright had recused.

(2005). While Navarrete cites to Arkansas cases that address the clean–hands doctrine, none are relevant, and she makes no persuasive argument as to how the doctrine is applicable here.

Navarrete next argues that because she had established in loco parentis status vis-à-vis S.R., she should be considered a "mother" within the meaning of Arkansas Code Annotated section 9-9-206(a)(1), and therefore the trial court erred in granting Creech's adoption petition without her consent. Navarrete contends that because the word "mother," as found in Arkansas Code Annotated section 9-9-206(a)(1), is not specifically defined in Arkansas Code Annotated section 9-9-202 as being limited to a biological mother, our court's strict construction of adoption statutes has less compelling force and effect in the absence of clear and unambiguous statutory language.

We review adoption proceedings de novo, but we will not reverse the trial court's decision unless it is clearly erroneous or against a preponderance of the evidence, after giving due regard to its superior opportunity to determine the credibility of the witnesses. *Hollis v. Hollis*, 2015 Ark. App. 441, at 6, 468 S.W.3d 316, 320. We give great weight to a trial judge's personal observations when the welfare of children is involved. *In re Adoption of Lybrand*, 329 Ark. 163, 169, 946 S.W.2d 946, 949 (1997). This court has stated that in cases involving minor children, a heavier burden is cast on the court to utilize to the fullest extent all its power of perception in evaluating the witnesses, their testimony, and the children's best interest; that the appellate court has no such opportunity; and that we know of no case in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as one involving minor children. *Hollis*, *supra*.

Navarrete cites to several cases that address the concept of in loco parentis in an effort

to bolster her argument that her consent was required prior to the adoption. Our supreme

court has explained the doctrine of in loco parentis:

> The Latin phrase, "in loco parentis," literally translated, means "in the place of a
> parent." *Simms v. United States*, 867 A.2d 200 (D.C. 2005). This court has defined
> in loco parentis as "in place of a parent; instead of a parent; charged factitiously with
> a parent's rights, duties, and responsibilities." *Standridge v. Standridge*, 304 Ark. 364,
> 372, 803 S.W.2d 496, 500 (1991). A person who stands in loco parentis to a child
> puts himself or herself in the situation of a lawful parent by assuming the obligations
> incident to the parental relation without going through the formalities necessary to
> a legal adoption. *Babb v. Matlock,* 340 Ark. 263, 9 S.W.3d 508 (2000). This
> relationship involves more than a duty to aid and assist, and more than a feeling of
> kindness, affection, or generosity. *Simms, supra.*

*Daniel v. Spivey*, 2012 Ark. 39, at 6, 386 S.W.3d 424, 428.

While the circuit court allowed Navarrete to intervene on the basis of in loco parentis

status, her argument on appeal is that the adoption should not have been granted because

she did not give her consent. Her argument is unpersuasive. The trial court heard testimony

and correctly found that the only consents required had been filed and fulfilled. The

biological father of S.R. is unknown; F.R., the biological mother, voluntarily terminated

her rights to the child by properly executing relinquishment-and-termination–with–power–

to–consent documents, entered her appearance, and waived all notice of summons with

respect to the proceedings. Pursuant to Arkansas Code Annotated section 9-9-206(a)(1),

the only consent required in this case is that of the mother of the minor. F.R., the child's

biological mother, properly gave her consent. No consent was required from Navarrete

regardless of whether she stood in loco parentis.

The ultimate determination of the child's best interest is the primary consideration of the trial court. *Manuel v. McCorkle*, 24 Ark. App. 92, 749 S.W.2d 341 (1988). Here, Navarrete does not challenge the best-interest finding. Her arguments that Creech acted with unclean hands and that Navarrete's consent to the adoption was required are both without merit. Accordingly, we affirm.

Affirmed.

HARRISON and KINARD, JJ., agree.

*Jimmie Carl Bush*, for appellant.

*Hurst Law Group*, by: *Justin B. Hurst*, for appellee.