PHILLIP T. WHITEAKER, Judge
In this stepparent adoption case, appellant Greg Holmes appeals a final decree from the Benton County Circuit Court granting an adoption petition filed by appellees Erin and Michael Wilhelm. Holmes argues five points, but his primary contention is that the circuit court erred by finding that his consent was not necessary and that the adoption was in the child's best interest. We affirm.
We review adoption proceedings de novo. We will not, however, reverse the circuit court's decision unless it is clearly erroneous or against a preponderance of the evidence, after giving due regard to its superior opportunity to determine the credibility of the witnesses. Navarrete v. Creech , 2016 Ark. App. 414, 501 S.W.3d 871. We give great weight to a circuit court's personal observations when the welfare of children is involved. Id. With these standards in mind, we turn our attention to a de novo review of the proceedings and the evidence before the circuit court.
*875 Holmes and Erin Wilhelm were previously married. E.W. was born on August 29, 2006, during the marriage. Holmes and Erin divorced in November 2007 in Pulaski County. By an agreed divorce decree, Holmes and Erin had joint custody, but Erin was named the custodial parent. Holmes was awarded visitation and ordered to pay child support.
Erin moved to Northwest Arkansas after the divorce. She began dating Michael Wilhelm in mid-2012, and they married in April 2013. In August 2016, Michael and Erin filed a petition for Michael to adopt E.W. They asserted that Holmes's consent was not required under Arkansas Code Annotated section 9-9-207(a)(2)(i) (Repl. 2015) because Holmes had failed significantly without justifiable cause to communicate with E.W. for a period of at least one year. Holmes filed a pro se answer denying the material allegations of the petition. Holmes later retained counsel to represent him.
The parties litigated the case over three days between February and April 2017. On June 27, 2017, the circuit court entered its decree of adoption. The court found that Holmes had received appropriate statutory notice pursuant to the notice provisions of Act 1779 of 2001, that Holmes's consent was not required in that he had failed significantly without justifiable cause to communicate with E.W. for a period of at least one year, and that it was in E.W.'s best interest to grant the adoption. This appeal followed.
On appeal, Holmes argues five points. First, he argues that his consent to the adoption was required. Generally, a petition to adopt a minor may be granted only if written consent has been executed by the father of the minor if he was married to the mother at the time the minor was conceived or at any time thereafter. Ark. Code Ann. § 9-9-206(a)(2)(A). Holmes was married to Erin when E.W. was conceived, and this general rule would require his consent. There are exceptions to this general rule, however. One of the exceptions relevant to this appeal is found in Arkansas Code Annotated section 9-9-207(a)(2), which provides that a parent's consent to adoption is not required if the child is in the custody of another, and the parent for a period of at least one year has failed significantly without justifiable cause to either communicate with the child or to provide for the care and support of the child.[1]
Here, the circuit court heard undisputed evidence that the last visit between Holmes and E.W. was in August 2012 and that the last contact of any kind between Holmes and E.W. was in December 2013. Likewise, the circuit court heard evidence that between June 2014 and early August 2016, there was no contact whatsoever between Holmes and E.W.[2] There is no dispute that Holmes had no communication with E.W. for a period in excess of one year. The issue then becomes whether Holmes failed significantly to communicate without justifiable cause. "Failed significantly" certainly does not mean "failed totally." Pender v. McKee , 266 Ark. 18, 582 S.W.2d 929 (1979). Rather, it means a failure that is meaningful or important. Id. "Without justifiable cause" denotes a failure that is voluntary, willful, arbitrary, and without adequate excuse. In re Adoption of K.F.H. & K.F.H. , 311 Ark. 416, 844 S.W.2d 343 (1993).
*876 Despite the undisputed lack of communication, Holmes argues that his consent is still required because any failure to communicate with E.W. was the result of Erin's willful interference. According to Holmes, Erin stopped answering his texts and phone calls and began actively blocking his communication with E.W. This interference, Holmes argues, justifies his failure to communicate with E.W. and mandates his consent under Arkansas Code Annotated section 9-9-207. Erin denies that she actively blocked Holmes's communications with E.W., but she does admit that she allowed E.W. to decide whether to communicate with Holmes.[3]
The circuit court heard, weighed, and evaluated the conflicting testimony between the parties. This court has stated that in cases involving minor children, a heavier burden is cast on the circuit court to utilize to the fullest extent all its power of perception in evaluating the witnesses, their testimony, and the children's best interest; that the appellate court has no such opportunity; and that we know of no case in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as one involving minor children. Navarrete, supra. The court found that Holmes's last visit with E.W. was in August 2012 and also found that Holmes made no effort whatsoever to have contact with E.W. between June 2014 and August 2016. In reaching these findings, the court made credibility determinations. It concluded that Holmes did not attempt as much contact with E.W. as he believed and that Erin thwarted Holmes's visitation more than she believed. The court also found Holmes's testimony that he did not know how to contact his son not credible. By clear and convincing evidence, the court found that the facts did not constitute justifiable cause for Holmes's lack of communication with E.W. and that Holmes's consent to the adoption was not required. We find no error on this point.
Holmes argues in his second and third points on appeal that the circuit court erred in finding that the adoption was in E.W.'s best interest.[4] We disagree.
Holmes and his family presented significant testimony about the relationship that existed between them and E.W. The court, however, found that the evidence was clear that this contact happened when E.W. had been very young. In fact, E.W. testified he had little memory of those relationships. The court was very bothered by E.W.'s demeanor and testimony, commenting on how ten-year-old E.W. could "present so mature and so matter of fact" in stating that he wanted nothing to do with his biological father. Because the court believed Holmes was a good person, the court was concerned about E.W.'s feelings and whether they were the result of undue influence. The court appointed Dr. Martin Faitak, a clinical psychologist, to evaluate E.W. Dr. Faitak confirmed that E.W.'s feelings were genuine, that E.W. wanted nothing to do with Holmes, and that there was no real evidence of undue influence. Additionally, the court found that for a period of almost four years between 2012 *877 and 2016, E.W. and Holmes had limited contact with one another. The court found this to be a critical time for E.W. in that it had been almost 50 percent of his life. During this period, the court ruled, the evidence was clear that E.W. developed a relationship with Michael Wilhelm and viewed Michael as his father. The court found no evidence that Michael was trying to replace Holmes; but instead, it was Holmes's and Erin Wilhelm's actions that led to Michael's being the father figure to E.W. We find no error on this point.
For his fourth point on appeal, Holmes argues the circuit court erred in finding that he received the notice provisions of Act 1779 of 2001. See Act of Apr. 18, 2001, No. 1779, 2001 Ark. Acts 7734. Act 1779 requires a child-support order to contain a notice to the noncustodial parent that the failure to pay support or to visit with the child for a period of at least one year shall provide the custodial parent with grounds to terminate the noncustodial parent's parental rights. Id. The Act further provides the noncustodial parent with a means to come into compliance with the child-support order and prevent the adoption or termination of parental rights. Id. At trial, Holmes presented testimony that the agreed divorce decree that he signed did not contain the mandatory notice provision required by statute. He further testified that had he been aware of this notice, he would not have allowed more than a year to transpire before communicating with E.W. Despite Holmes's testimony, the court found that all the copies of the divorce decree between Holmes and Erin introduced into evidence had the required notice attached. The court simply did not afford Holmes's testimony the weight that he desires. We find no error on this point.
Finally, Holmes argues that the circuit court erred in deferring to E.W.'s wishes to be adopted by Michael and crediting Dr. Faitak's report evaluating E.W.'s wishes. The court gave great weight to E.W.'s desires based on the court's observation of E.W. combined with Dr. Faitak's report. The court ultimately found E.W. credible. Holmes argues that this evidence was unreliable because E.W.'s brain was not yet fully developed, and he could not comprehend the import of his adoption by Michael. Holmes also claimed that Dr. Faitak's report was suspect because he had not been informed of all the circumstances leading to Holmes's cessation of communication with E.W. What Holmes is asking us to do, in essence, is to reweigh the evidence in his favor, which is not the function of the appellate court. We do not substitute our judgment or second-guess the credibility determinations of the circuit court; we will reverse only in those cases when a definite mistake has occurred. Madison v. Ark. Dep't of Human Servs. , 2013 Ark. App. 368, 428 S.W.3d 555. Here, the circuit court considered all the evidence and made findings as to the credibility of the witnesses; it simply weighed the evidence differently than Holmes desired. When reviewing the entire evidence, we cannot say with firm conviction that a mistake has been committed. Thus, we hold that the circuit court did not clearly err in granting the adoption.
Affirmed.
Virden and Klappenbach, JJ., agree.

There is no issue as to Holmes's provision of support in this case.

Holmes texted Erin asking for visitation on August 3, 2016. On August 15, 2016, Michael and Erin filed a petition for Michael to adopt E.W.

At all times relevant to Erin's allowing E.W. to make this decision, E.W. was under the age of seven.

In his second point, Holmes argues there was no evidence that the adoption would improve E.W.'s life. In his third point, Holmes argues that the circuit court erred in denying his motion for directed verdict because there was insufficient evidence that his failure to communicate with E.W. was without justifiable cause and there was insufficient evidence to support a finding that the adoption was in E.W.'s best interest. Because both of these points pertain to best interest, we consider them together.